*Formatted for Electronic Distribution*                                                                                *Not for Publication*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF VERMONT**

_____

In re:
      DANIEL JASON WURZBACHER,
           Debtor.

_____



Filed & Entered
On Docket
July 20, 2009

Chapter 7 Case
# 09-10439

**ORDER**
**DENYING DEBTOR'S MOTION FOR CONTEMPT**

    Presently before the Court is the pro se Debtor's motion asking the Court to find that Auto Credit Solutions, LLC and Douglas Jordan (collectively, the "Lienholder") be found in contempt for violation of the automatic stay, under 11 U.S.C. § 362. The Debtor points to two incidents where the Lienholder sought to, and eventually did, repossess his vehicle. While the Court finds that the Lienholder's behavior during the first incident was a willful violation of the automatic stay, the Debtor did not prove any actual damages in connection with that event and hence is not entitled to damages. The Debtor did prove he had actual damages with respect to the second incident, but the case had been dismissed prior to that incident and therefore the Debtor cannot recover for any damages he suffered as a result of his car being repossessed at that time.

    The background is as follows: On April 20, 2009, the Debtor, Daniel Jason Wurzbacher, appearing pro se, filed a petition to commence this chapter 7 case (doc. # 1). On April 21, 2009, the Debtor filed a motion requesting injunctive relief and confirmation of the automatic stay, in which he asserted that he notified the Lienholder of this bankruptcy case promptly after he filed his bankruptcy petition (doc. # 7).

    On the same day as the Debtor filed for bankruptcy relief, he also moved for a temporary waiver of the credit counseling requirement (doc. # 4), and filed a certificate of credit counseling ("CCC") (doc. # 6). On Thursday, April 23, 2009, the Court issued a Sua Sponte Order Denying the Motion to Waive Credit Counseling and for Fee Waiver, and Dismissing the Case (doc. ## 11, 12). The Order indicated that the CCC had been filed outside the 180-day period preceding the date of filing, the Debtor had not made a statement of exigent circumstances or an inability to obtain credit counseling within five days of making the request, pursuant to § 109(h)(3), and that deficiency required dismissal of the case. Id.

    On Monday, April 27, 2009, the Debtor filed a Motion for Contempt (doc. # 15) and a Motion to Reconsider Dismissal (doc. # 16). In the Motion for Contempt, the Debtor moved for damages against the Lienholder for violation of the automatic stay (doc. # 15). The Debtor stated that the Lienholder had violated the automatic stay on April 20, 2009, when the Lienholder first went to the Debtor's house with

1

the intent to repossess the vehicle (as described above) and also on April 24, 2009, when the Lienholder successfully repossessed the vehicle. Id. In that motion, the Debtor offered more facts concerning the events of April 20, 2009, stating that he had spoken to Mr. Jordan on the telephone very shortly after he had filed his case, had given Mr. Jordan the bankruptcy case number, and had informed Mr. Jordan about the imposition of the automatic stay and the process the Lienholder was required to use in order to repossess collateral in a bankruptcy case. Id. The Debtor went on to say that Mr. Jordan appeared at his house a half-hour later stating that he intended to repossess the vehicle, threatened to call the police, asserted he would lock the vehicle so the Debtor could not use it, verbally harassed the Debtor, and then left the premises. Id. The Debtor fervently expressed his belief that the Lienholder would "attempt to repossess the property whether inside or outside the bounds of the law." Id. The Debtor went on to describe how, on April 24th, Mr. Jordan repossessed Debtor's vehicle, without warning, in violation of the stay. Id. The Debtor also indicated that he tried to contact Mr. Jordan but the Lienholder did not return his telephone calls. Id.

In his Motion for Reconsideration, the Debtor explained that he had obtained the required credit counseling a week before he filed his petition, but because of an intervening weekend, the counseling agency did not date the certificate at the time that the Debtor had actually taken the course (doc. # 16). The Court scheduled a hearing regarding the adequacy of the CCC for May 5, 2009 (doc. # 17). It also set a hearing on the Motion for Contempt for that same date and time (doc. # 18). The Lienholder did not appear at the May 5, 2009 hearing. The Debtor testified at the hearing. Based upon the testimony, the Court advised the Debtor that he needed to file an affidavit from the credit counseling agency verifying that he had received the counseling prior to the day he filed his bankruptcy petition, in order to obtain an order vacating the dismissal of the case. The Court also directed the Debtor to serve the Motion for Contempt and Hearing Notice on the Lienholder as a condition to proceeding with the Motion for Contempt. Both motions were set for hearing on June 16, 2009.

The Debtor served the Motion and Notice of Motion for Contempt on Auto Credit Solutions by Certified Mail (doc. # 27). The Debtor filed an affidavit from the credit counseling agency (doc. # 28) and on May 12, 2009, the Court granted the Debtor's motion to reconsider dismissal of the case and vacated the dismissal order (doc. # 29).

On June 16, 2009, the Court held a hearing on the Debtor's Motion for Contempt. The Debtor testified; neither Mr. Jordan nor any representative of the Lienholder appeared. The Debtor's testimony mainly concerned the impact of Mr. Jordan's successful repossession of the Debtor's vehicle, and the economic impact the Debtor suffered as a result of the repossession. He described his damages as lost work time and a loss of the $800 of equity he had in the vehicle. He provided copies of receipts for the $800 he had paid to the Lienholder. He also testified concerning his April 20 encounter with Mr. Jordan,

whom he described as the owner and only "partner" of Auto Solutions, LLC. The Debtor stated that even after being told of the bankruptcy filing, Mr. Jordan arrived at his home, threatened him, asked for the key to the vehicle so that the person he had brought with him could drive it back to the Lienholder's place of business. The Debtor also testified that he had taped the case number information about his bankruptcy filing on the inside of the car so that anyone entering the car would see it. In recounting his confrontation with the Lienholder, the Debtor was credible and displayed a calm demeanor. Nothing in his testimony indicated any continuing emotional distress as a result of the confrontation with the Lienholder, though he repeatedly expressed his belief that the Lienholder had no regard for federal law or court orders and that the Lienholder willfully repossessed the vehicle knowing that a stay was in place.

The Court took the matter under advisement.

Much has been written about the importance of the automatic stay. "The legislative history of 11 U.S.C. § 362 reveals that 'the automatic stay is one of the fundamental protections provided by the bankruptcy laws.'" Henkel v. Lickman (In re Lickman), 297 B.R. 162, 187 (Bankr. M.D. Fla. 2003) (quoting 3 Collier on Bankruptcy ¶ 362.06 at 362-76 (15th ed. rev. 2003)). Section 362(a) stays the commencement or continuation of virtually all proceedings against a debtor that were or could have been commenced before the debtor filed for bankruptcy. It undergirds an important purpose of bankruptcy law: "providing debtors with a fresh start, protecting the assets of the estate, and allowing the bankruptcy court to centralize disputes concerning the estate." MBNA America Bank, N.A. v. Hill, 436 F.3d 104, 109 (2d Cir. 2006). "'The general policy behind this section is to grant complete, immediate, albeit temporary relief to the debtor from creditors, and also to prevent dissipation of the debtor's assets before orderly distribution to creditors can be effected.'" S.E.C. v. Brennan, 230 F.3d 65, 70 (2d Cir. 2000) (quoting Penn Terra Ltd. v. Dep't of Envtl. Resources, 733 F.2d 267, 271 (3d Cir. 1984)).

The relevant subsection of the stay provision, 11 U.S.C. § 362(a), provides in pertinent part:

(a) Except as provided in subsection (b) of this section, a petition filed [under the Bankruptcy Code] ... operates as a stay, applicable to all entities, of-

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

\* \* \*

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate....

11 U.S.C. § 362(a). The term "act" referred to in § 362(a)(3) is "broadly construed," 3 Collier on Bankruptcy ¶ 362.03[8][a], and "Congress intended this provision to be liberally construed to fortify the protections of the automatic stay." In re Flack, 239 B.R. 155, 162 (Bankr. S.D. Ohio 1999). The automatic

3

stay "is effective as of the moment of filing of the bankruptcy petition." In re Crawford, 388 B.R. 506, 517 (Bankr. S.D.N.Y. 2008) (citation omitted).

Section § 362(k)(1) of the Code allows for the recovery of compensatory and punitive damages for willful violations of the automatic stay. It states:

> Except as provided in paragraph (2), an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

11 U.S.C. § 362(k)(1). This provision "mandates an award of actual damages to an individual where the violation is willful, and the Court has discretion to assess punitive damages. . . . A violation of the automatic stay is just that, a violation of the automatic stay – there is no such thing as a slight violation." Crawford, 388 B.R. at 518 (citations omitted).

Although the Debtor focused a substantial portion of his testimony on the fact that the Lienholder actually repossessed his car on April 24, 2009, he has also accused the Lienholder of a stay violation based upon its actions on April 20, 2009. The Court will examine each of those incidents separately because the procedural posture of the case was different on those two days.

With regard to the events of April 24th, when the Lienholder repossessed the vehicle, the Court finds that the Lienholder did not violate the automatic stay on that day because there was no case pending on that date and therefore no automatic stay was in effect. The case had been dismissed by court order on April 23rd, the day before the repossession, and the automatic stay terminated at that time. 11 U.S.C. § 362(c)(2)(B). See Porges v. Gruntal & Co., Inc. (In re Porges), 44 F.3d 159, 165 (2d Cir. 1995) (observing that "[i]n any case the dismissal lifted the automatic bankruptcy stay").

By contrast, on April 20th, the bankruptcy case was pending and thus the stay was in effect. On that day, the Lienholder came onto the Debtor's property with the intention of removing the vehicle. This attempt to repossess collateral from a party who had a pending bankruptcy case violated the stay. The next question is whether the Lienholder willfully violated the stay. Willful violation is a predicate for allowing compensatory and, in some cases, punitive damages. As this Court recently wrote:

> The standard for actions constituting a willful violation of the automatic stay is well established. "A creditor acts willfully if it (1) has knowledge of the [bankruptcy] petition, and (2) the act which violates the stay was intentional." In re Sullivan, 367 B.R. 54, 62 (Bankr.N.D.N.Y.2007) (citing In re Turner, # 04-66972, slip op. at 9 (Bankr.N.D.N.Y.2006)) (in turn citing Crysen/Montenay Energy Co. v. Esselen Assoc., Inc., 902 F.2d 1098, 1105 (2d Cir.1990)). See 3 Collier on Bankruptcy ¶ 362.11[3] (15th ed., rev.2007) ("Once the creditor becomes aware of the filing of the bankruptcy petition and therefore the automatic stay, any intentional act is 'willful.' "). The Sullivan Court further explained that:
>
>> [a] willful violation of the stay does not require specific intent to violate the stay. A party can be subject to liability under 362(h) [now § 362(k)(1)] if it engages in conduct which violates the automatic stay, with knowledge that a bankruptcy petition has been filed. In determining whether a stay violation was willful, it is irre-

4

> levant whether the party believed in good faith that it had a right to the property at issue. Not even a good faith mistake of law or a legitimate dispute as to legal rights relieves a willful violator of the consequences of his act. Sullivan, 367 B.R. at 62 (citation omitted).

In re Campbell, 398 B.R. 799, 811-12 (Bankr. D.Vt..2008). The Debtor's testimony is uncontroverted that he told the Lienholder that he had filed for bankruptcy protection before the Lienholder came onto the Debtor's property to repossess the car, and that the Debtor repeated that fact to the Lienholder when he was on the Debtor's premises. These facts are sufficient for the Court to find that the Lienholder had actual knowledge that the Debtor filed for bankruptcy relief. As to whether the Lienholder's acts violating the stay were willful, the Second Circuit in Crysen/Montenay concluded that "any deliberate act taken in violation of a stay, which the violator knows to be in existence, justifies an award of actual damages." 902 F.2d at 1105. Because the Lienholder knew about the bankruptcy filing and acted intentionally, his conduct de facto violated the stay, the stay violation was willful, and the Lienholder may be held liable for actual damages. See In re Baumblit, 251 B.R. 444, 445 (E.D.N.Y. 2000) (holding that an award of actual damages was appropriate – i.e., that the creditor's actions were willful – where the creditor took a deliberate act in violation of the stay and had knowledge of the bankruptcy).

It is well-settled that emotional distress may serve as a predicate for actual injury, although it must be more than fleeting, inconsequential, and medically insignificant to be compensable. See Aiello v. Providian Financial Corp., 257 B.R. 245, 250 (N.D.Ill. 2000). The Aiello Court outlined a number of non-exhaustive circumstances where the court may presume that emotional distress occurred:

> Surely, this requisite severity can be established by medical or other supporting evidence. Where no medical evidence exists, however, emotional distress can be reasonably presumed where the stay violation is sufficiently offensive. The cases described above illustrate that such a presumption is justified when, for example, the debtor is physically threatened, see, e.g., In re Wagner, 74 B.R. at 900 (creditor breaking into debtors' house and threatening to "blow your brains out"); the violative act constitutes an invasive and personal attack, see, e.g., In re Carrigan, 109 B.R. at 170 (going to debtor's house to abusively demand money . . . Of course, this list is nonexhaustive and a presumption of emotional distress may be justified in other equally egregious situations. In contrast, where the violation of the stay, although technically a violation, is innocuous, alleged emotional distress is noncompensable without further substantiation.

Id. at 250-51. In the examples above, the courts granted emotional distress awards without requiring proof beyond the debtor's own assertions of distress. Id. at 251. See, e.g., In re Holden, 226 B.R. 809, 811 (Bankr. D.Vt. 1998) (awarding actual damages for emotional distress).

In this case, however, the Debtor has introduced no evidence that he suffered any emotional distress as a result of the Lienholder's actions. While the Debtor is a pro se plaintiff and this Court construes his pleadings generously as a result of that fact, it cannot grant relief if the pro se litigant has not met his burden of proof. Here, there was no testimonial evidence or factual basis in the record to find that the Debtor suffered any actual injuries as a result of the Lienholder's actions on April 20th. See In re Perrin,

361 B.R. 853, 857 (6th Cir. BAP 2007) ("Where there [is] no proof in the record concerning actual damages suffered by the Debtor[ ], the bankruptcy court properly declined to award damages. . . As a matter of law, [the debtor] was not entitled to recover damages because he failed to prove that he was injured by [the creditor's] violation of the automatic stay.").

Based upon the foregoing, the Court finds that the Debtor has presented sufficient proof to demonstrate that the Lienholder willfully violated the automatic stay on April 20, 2009, but has failed to prove that he suffered any injury as a result of the April 20th conduct. Therefore, damages may not be assessed against the Lienholder for its April 20th actions. With regard to the April 24th repossession, the Court finds that even though the Debtor has proven that the Lienholder's conduct on that day caused him actual injuries and damages, this case was not pending on that date and therefore no remedy is available.

Accordingly, IT IS HEREBY ORDERED that the Debtor's motion for contempt (doc. ## 15, 27) is DENIED.

IT IS FURTHER ORDERED that the Lienholder is on notice that future willful violations of the automatic stay against this Debtor or other debtors may result in a sanction of actual and even punitive damages.

SO ORDERED.

Rutland, Vermont
July 20, 2009

Colleen A. Brown
United States Bankruptcy Judge